IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GARY DENNIS,                                        Case No. 3:10-cv-1251-MA

                  Plaintiff,               OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

                Defendant.

BRUCE W. BREWER
Attorney at Law
419 5th Street
Oregon City, Oregon 97045

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

LEISA A. WOLF
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge:

Plaintiff Gary Dennis brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles XVI and II of the Social Security Act (the "Act"). <u>See</u> 42 U.S.C. §§ 401-403, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons set forth below, I AFFIRM the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed his first applications for DIB and SSI in November 1996, alleging disability as of January 1, 1991. Both applications were denied initially and upon reconsideration. A hearing was held before Administrative Law Judge ("ALJ") Riley Atkins on June 17, 1998. On July 30, 1998, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. The Appeals Council accepted review and, on July 31, 2000, remanded the case for further proceedings.

On July 15, 2001, after a second hearing, the ALJ issued another unfavorable decision. Plaintiff again requested review by the Appeals Council, who remanded the case for a third time on September 12, 2003. In the interim, plaintiff filed new DIB and SSI claims, on August 28, 2001 and September 5, 2001, respectively. Both applications were denied initially and upon reconsideration.

The new DIB and SSI claims were ultimately consolidated with the case that was on remand.

A third hearing was held before ALJ Thomas Tielens on May 13, 2004. At that time, plaintiff amended his alleged onset date to June 15, 1995 and alleged disability due to anxiety, borderline intellectual functioning, hepatitis C, attention deficit hyperactivity disorder ("ADHD"), seizures, depression, personality disorder, and tendonitis. On August 18, 2004, the ALJ issued a third unfavorable decision. After the Appeals Council declined review, plaintiff filed a complaint in this Court.

On November 14, 2008, the Honorable Anna Brown issued a decision determining that the ALJ erred in failing to address plaintiff's alleged impairments of ADHD, depression, tendonitis, and personality disorder at step two and improperly rejecting the third-party testimony. As such, Judge Brown remanded the case for further proceedings.

Accordingly, a fourth hearing was conducted on February 4, 2010; the ALJ, however, issued a continuance in order to complete the record. A supplemental hearing was held on May 20, 2010, at which plaintiff was represented by counsel and testified, as did Stephanie Dennis, plaintiff's mother, medical expert ("ME") Sally Clayton, Ph.D., and vocational expert ("VE") Richard Hincks. On June 4, 2010, the ALJ issued a fourth unfavorable decision.

Plaintiff appealed that decision directly to this Court without request for Appeals Council review.

## FACTUAL BACKGROUND

Born on April 8, 1971, plaintiff was 24 years old on the amended alleged onset date of disability and 39 years old at the time of the fourth hearing.  Plaintiff completed twelve years of education but did not receive a high school diploma because he was half a credit short.  He has previously worked as a laborer, kitchen helper, casting grinder, and hopper feeder.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform.  Yuckert, 482 U.S. at 141-42.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date.  See 20 C.F.R. §§ 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff has the following severe impairments: borderline intellectual functioning, anxiety,

antisocial personality disorder, and polysubstance abuse.  See 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, met listings 12.05, 12.06, 12.08, and 12.09.    See 20 C.F.R. §§ 416.920(d), 416.925, 416.926. However, the ALJ also found that plaintiff's substance abuse was a material factor in causing his disability.    42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).    Accordingly, the ALJ reassessed plaintiff's impairments and determined that he would not be presumptively disabled at step three if he stopped using drugs. See 20 C.F.R. §§ 404.1535, 416.935.    Thus, the ALJ continued the evaluation process to determine how plaintiff's medical impairments affected his ability to work.

The ALJ determined that, absent his substance abuse, plaintiff has the residual functional capacity ("RFC") to perform medium exertion work, involving simple, routine, repetitive tasks and minimal public contact.    See 20 C.F.R. §§ 416.927, 416.929.

At step four, the ALJ found plaintiff has past relevant work that he could perform.    See 20 C.F.R. § 416.965.

The ALJ also entered an alternative finding at step five; the ALJ found that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.    See 20 C.F.R. §§

416.960(c), 416.966.  As such, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff asserts that the ALJ erred by: 1) determining that his substance abuse was material; 2) finding that his impairments did not meet listing 12.05C; 3) failing to provide a legally sufficient reason to reject the lay testimony of Mrs. Dennis; 4) improperly evaluating the opinion of Dr. Wimmers; 5) concluding that plaintiff had past relevant work; and 6) applying the Medical-Vocational Guidelines (the "Grids") at step five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner

must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I.  Materiality of Plaintiff's Substance Abuse

Plaintiff contends that the ALJ improperly assessed the materiality of his substance abuse by failing to follow 20 C.F.R. § 404.1535. A "claimant cannot receive disability benefits if 'alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423(d)(2)(C)).

To determine whether substance abuse is a contributing factor material to the claimant's claim of disability, the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") pursuant to 20 C.F.R. § 404.1535. Id. at 747 (citing 20 C.F.R. § 404.1535(b)). Section 404.1535 provides that, in the DAA Analysis, "[t]he key factor . . . is whether [the Commissioner] would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). In making this decision, the ALJ must first evaluate which impairments would remain if the claimant stopped abusing substances. 20 C.F.R. § 404.1535(b)(2). If the remaining limitations would still be disabling, then the claimant's substance abuse is not a material contributing factor; conversely,

"if the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." <u>Parra</u>, 481 F.3d at 746-47 (citing 20 C.F.R. § 404.1535(b)); <u>see also</u> <u>Ball v. Massinari</u>, 254 F.3d 817, 821 (9th Cir. 2001).

Thus, if there is evidence of substance abuse in the record, and the claimant succeeds in establishing that he is disabled, the Commissioner must go through the five-step sequential process a second time. <u>Parra</u>, 481 F.3d at 746-47. The claimant bears the burden of proof. <u>Id.</u> at 748; <u>see also</u> <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1245 (9th Cir. 1998). Evidence that is inconclusive does not satisfy this burden. <u>Parra</u>, 481 F.3d at 748-49.

Here, the ALJ found that plaintiff was presumptively disabled at step three, as his impairments, "including the substance use disorders, meet the requirements of listings 12.05, 12.06, 12.08, and 12.09." (Tr. 1044.) Plaintiff does not dispute the ALJ's finding that he meets listing 12.09 for his substance addiction disorder.

As such, pursuant to 20 C.F.R. § 404.535, the ALJ repeated the sequential process to ascertain whether plaintiff's impairments would still be disabling absent the effects of drugs and alcohol. (Tr. 1045-51.) The ALJ concluded that, if plaintiff stopped using substances, he "would not have an impairment or combination of impairments that meets or medically equals" a listed impairment.

(Tr. 1045.)  Accordingly, the ALJ proceeded to steps four and five and found that, if plaintiff was not abusing drugs and alcohol, he could return to a former occupation, or alternatively, perform other jobs in the national economy.  (Tr. 1045-50.)

Substantial evidence supports the ALJ's determination. Plaintiff has a long history of substance abuse; he has been using alcohol, marijuana, and methamphetamine continuously since his early teens.  (Tr. 234-38, 356, 379, 590-93, 659-60, 1254.)  At the most recent hearing, plaintiff did not present any evidence indicating that his substance abuse was not materially contributing to his alleged disability; in fact, the only evidence presented regarding this issue was Mrs. Dennis's testimony.  (Tr. 1393-1410). Mrs. Dennis stated that she does not believe that plaintiff is currently using, but was not sure because "he doesn't live at home."  (Tr. 1404.)  Plaintiff, however, has repeatedly represented that he was drug and alcohol-free, only to later admit that he lied, sometimes under oath, and was still using.  (Tr. 588, 591-93, 622-23, 829, 833, 872, 928-29.)

Moreover, despite plaintiff's assertion that he suffers from disabling anxiety, he has never sought mental health treatment for this disorder.  (Tr. 355, 379, 382, 588, 873, 881, 1413.) Plaintiff's medical treatments have instead focused on substance abuse or minor temporary injuries.  While he has intermittently taken medications to treat his anxiety, such as BuSpar or Xanax,

9 - OPINION AND ORDER

plaintiff was non-compliant with his doctors' orders while taking these drugs.  (Tr. 355, 591-92, 829-30.)  In addition, there is evidence in the record that plaintiff was exhibiting drug-seeking behavior and exaggerating his symptoms.  (Tr. 1064-75 (summarizing medical evidence), 1048-9.)

When he was not regularly abusing drugs, plaintiff was able to function and cope much better.  (Tr. 409, 593-5, 829.)  For example, nurse practitioner Nancy Pitney observed that plaintiff was "markedly more relaxed" and "[h]is insight and judgment appear to be improved as well" after four weeks of sobriety.  (Tr. 409.) As such, numerous doctors opined that plaintiff's anxiety was "highly treatable condition" and was likely to "remit on its own" if plaintiff was "able to maintain his sobriety and abstinence." (Tr. 382, 409, 593-94, 1412.)

Therefore, plaintiff did not meet his burden of proof; rather, the record reveals that plaintiff's substance abuse has clearly impacted his mental status and ability to function.  Further, contrary to plaintiff's assertions, the ALJ expressly performed a DAA Analysis pursuant to C.F.R. § 404.1535.  Accordingly, because the ALJ applied the correct legal standard and substantial evidence supports the decision, the ALJ did not err in determining that plaintiff's substance abuse was a contributing factor material to his disability.

II.    <u>Listing 12.05C</u>

Plaintiff next asserts that the ALJ erred in determining that, absent the effects of his substance abuse, his impairments did not meet or equal listing 12.05C at step three.    In order to meet listing 12.05C, the claimant must: 1) have a "valid verbal, performance, or full scale IQ of 60 though 70"; and 2) have "a physical or other mental impairment imposing an additional and significant work-related limitation of function."    20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.    In addition, these limitations must manifest themselves before the claimant reaches the age of 22.    <u>Id.</u>

An impairment imposes a significant work-related limitation "when its effects on a claimant's ability to perform basic work activities is more than slight or minimal."    <u>Fanning v. Bowen</u>, 827 F.2d 631, 633 (9th Cir. 1987).    "This, in other words, is the definition of a 'severe' impairment."    <u>Rowens v. Astrue</u>, 2010 WL 3036478, *3 (E.D.Cal. Aug. 2, 2010); <u>see also</u> <u>Huber v. Astrue</u>, 2010 WL 4684021, *2 (D.Ariz. Nov. 12, 2010); <u>Taylor v. Astrue</u>, 2011 WL 4055243, *17 (E.D.Cal. Sep. 12, 2011).    As such, a claimant "who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of the § 12.05C listing."    <u>Rowens</u>, 2010 WL 3036478, *3 (citing <u>Fanning</u>, 827 F.2d at 633).

In this case, the ALJ offered somewhat conflicting statements concerning the second requirement of listing 12.05C. The ALJ stated that, even if plaintiff stopped using drugs and alcohol, he "would continue to have a severe impairment or combination of impairments." (Tr. 1045.) However, the ALJ also specifically found with respect to listing 12.05C that plaintiff "did not have a physical or other mental impairment imposing an additional and significant work-related limitation of function" absent his substance abuse. (Tr. 1046.)

Nevertheless, the ALJ explicitly found that plaintiff did not meet the first requirement of listing 12.05C: "the 'paragraph C' criteria of 12.05 would not be met because the claimant would not have a valid verbal, performance, or full scale IQ of 60 through 70" if he stopped using drugs. (Id.) In so concluding, the ALJ relied on Dr. Clayton's testimony as ME at the 2010 hearing. (Tr. 1410-13.)

Dr. Clayton acknowledged that the majority of evaluators who met with and examined plaintiff diagnosed borderline intellectual functioning. (Tr. 1411.) Dr. Clayton, however, opined that the previous assessments of plaintiff's IQ scores were clouded by his significant drug use, which impacted his intellectual functioning. (Id.) Accordingly, Dr. Clayton concluded that plaintiff would not have a valid verbal, performance, or full scale IQ of 60 through 70 absent the substance abuse. (Tr. 1049, 1412.) As such, contrary

to plaintiff's assertion, the ALJ did not "silently ignore those IQ scores" generated by Drs. Sacks and Wicher.  Rather, based on Dr. Clayton's testimony, the ALJ concluded that those IQ scores were not an accurate representation of plaintiff's mental capabilities due to his life-long struggle with substances and the fact that he may have been under the influence or in withdrawal while IQ testing was performed.  (Tr. 1049, 1409-12.)  Thus, the ALJ concluded that plaintiff did not satisfy the first prong of listing 12.05C and, as such, was not presumptively disabled at step three.

The ALJ then noted that, consistent with Dr. Clayton's opinion and the observations of Drs. Sachs and Wicher, plaintiff's level of adaptive functioning, as evidenced through his activities of daily living and ability to work after the alleged onset date, was much higher than his IQ scores indicated.  (Tr. 377, 593-95, 1046.)

Therefore, although the issue of whether plaintiff meets the second prong of listing 12.05C is arguably close, I find that, when the record as a whole is examined and considering all reasonable inferences, the ALJ's interpretation of the evidence is a rational one.  Accordingly, the ALJ's step three finding must be upheld. Andrews, 53 F.3d at 1039-40; Edlund, 253 F.2d at 1156.

III.  Lay Testimony

Plaintiff alleges that the ALJ improperly rejected the lay testimony of Mrs. Dennis.  Lay testimony regarding a claimant's

symptoms or how an impairment affects the ability to work "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determined to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  The reasons "germane to each witness" must be specific. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); see also 20 C.F.R. §§ 404.1513(d)(4), (e). However, in rejecting lay testimony, the ALJ need not cite to the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.

Mrs. Dennis completed third-party adult function reports in 1996 and 2002.  (Tr. 73-81, 555-66.)  Mrs. Dennis's reports generally describe an individual who has no physical or social limitations, but who has a difficult time completing tasks and following instructions. (Tr. 563.) As such, Mrs. Dennis stated that plaintiff cannot function in the work place because he "need[s] too much supervision[,] whines a lot[, and is] not dependable." (Tr. 565.)

In addition, Mrs. Dennis testified at the 2010 hearing. (Tr. 1393-1410.) Mrs. Dennis again described an individual who needed too much supervision to be competitively employed. (Tr. 1394.)

However, she explained that while plaintiff had poor grades in school, he was never required to have specialized counseling, neuropsychological evaluations, an individualized education plan, or participate in special education classes. (Tr. 1399-1400.) Mrs. Dennis also testified that plaintiff was a "sweet, nice guy" who gets along well with others. (Tr. 1405.) Further, as discussed above, Mrs. Dennis acknowledged plaintiff's longstanding issues with substances and conceded that he admitted to using methamphetamine as recently as April 2009. (Tr. 1404-05.)

The ALJ remarked that "there is no reason to doubt the sincerity of . . . the witness' observations of the behaviors and/or symptoms the claimant demonstrates." (Tr. 1048.) Regardless, the ALJ assigned limited weight to Mrs. Dennis's statements because her observations were inconsistent with "the objective medical evidence [and] other corroborating evidence." (Id.) The ALJ then cited to Dr. Wicher's report, in which the doctor opined that plaintiff's mental impairments where "likely caused by his methamphetamine abuse and possible drug withdrawal." (Tr. 1049, 593-95.) Accordingly, as the ALJ noted, Dr. Wicher concluded that plaintiff "was clearly capable of working." (Tr. 1049, 594.)

The ALJ recognized that Mrs. Dennis's testimony characterized "underlying medical conditions that could reasonably result in the symptoms he alleges if he continued to abuse substances"; the ALJ

nonetheless determined that, once plaintiff stopped abusing substances and followed through with the prescribed medical treatments, he would no longer be limited to the extent observed by his mother. (Id.) Finally, the ALJ noted that plaintiff had repeatedly "exaggerated symptoms and limitations" and "engaged in drug-seeking behavior" and, despite the difficulties described by Mrs. Dennis, was able to perform "odd jobs" on a weekly basis while still pursuing SSI and DIB. (Tr 1047-49.) As such, the ALJ concluded that plaintiff may not have accurately represented his abilities, even to his mother. (Id.)

Third-party statements are properly discounted where they are inconsistent with the medical evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing Lewis, 236 F.3d at 511). Further, lay testimony can be discounted for the same reasons as a claimant's subjective reports. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). Substantial evidence supports the ALJ's determination that Mrs. Dennis's statements were inconsistent with the medical evidence and plaintiff's own reports. Therefore, the ALJ provided germane and specific reasons for rejecting Mrs. Dennis's testimony.

IV.   Dr. Wimmers' Medical Opinion

Plaintiff argues that the ALJ erred by failing to address the opinion of non-examining psychologist, Richard Wimmers, Ph.D.

16 - OPINION AND ORDER

Specifically, plaintiff asserts that the ALJ should have included the limitations described by Dr. Wimmers in his RFC.

In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p, available at 1996 WL 374184, *1-5. In addition, the ALJ is required to consider all medical opinions and assess the weight to be afforded each opinion. 20 C.F.R §§ 404.1527, 416.927. However, the RFC need only incorporate limitations found on the record. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (restrictions not supported by substantial evidence may be freely accepted or rejected by ALJ).

Accordingly, there are three types of medical opinions that the ALJ must assess: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Of the three types of medical opinions, those of non-examining doctors are afforded the least amount of weight. Id. (citations omitted). As such, the opinion of a non-examining doctor "cannot by itself constitute substantial evidence." Id. at 831. As such, unlike with treating or examining doctors, the ALJ need only "reference . . . specific evidence in the medical record" in order to reject the opinion of a non-examining doctor. Sousa, 143 F.3d at 1244 (citing Gomez v. Chater, 74 F.3d 967, 972 (9th Cir.), cert. denied, 519 U.S. 881 (1996); and Andrews, 53 F.3d at 1041).

On May 6, 1997, Dr. Wimmers, in reviewing plaintiff's file for the State Disability Determination Services, found that plaintiff was moderately limited in his ability to: maintain attention and concentration for extended periods; understand, remember, and carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; respond appropriately to changes in work setting; and set realistic goals or make plans independently of others. (Tr. 120-21.)  Dr. Wimmers, however, noted that plaintiff was not significantly limited in any of the other thirteen areas assessed. (Id.)  Accordingly, Dr. Wimmers concluded that plaintiff was capable of working in a familiar setting with a set routine. (Tr. 122.)

Without expressly referencing Dr. Wimmers's report, the ALJ determined that, if plaintiff stopped using drugs and alcohol, he would have: mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; with no extended episodes of decompensation. (Tr. 1046.) Accordingly, the ALJ concluded that plaintiff "would have the [RFC] to perform medium [exertion] work . . . except he is restricted to simple, routine, repetitive work, requiring only minimal interaction with the general public." (Id.)

Because the ALJ "may not ignore" opinions of state agency psychologists and, as such, "must explain the weight given to these opinions in their decisions," it was legal error for the ALJ to fail to address Dr. Wimmers's opinion. SSR 96-6p, available at 1996 WL 374180, *1. Nevertheless, for the three reasons discussed below, such an error was harmless. See Stout, 454 F.3d at 1055 (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" constitute harmless error).

First, the term "moderate" does not indicate a degree of limitation that must be expressly reflected in a claimant's RFC. See Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). Therefore, even if the ALJ adopted Dr. Wimmers's opinion in its entirety, plaintiff's RFC would not necessarily include further restrictions.

Second, and more importantly, I find that the RFC already adequately addresses the limitations assessed by Dr. Wimmers. The ALJ found that plaintiff was limited to "simple, routine, repetitive work" with minimal public contact. (Tr. 1046.) An RFC to perform simple, repetitive tasks is sufficient to accommodate a claimant's moderate limitations in attention, concentration, and social functioning. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

Plaintiff does not articulate what other limitations follow from Dr. Wimmers's assessment besides those already listed in the RFC. The burden of establishing "that an error is harmful falls on the party attacking an administrative agency's decision." Shinseki v. Sanders, 129 S.Ct. 1696, 1706 (2009) (citations omitted); see also McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (Sanders applies to social security cases). Thus, "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." McLeod, 640 F.3d at 887. Because plaintiff neglected to address what further RFC limitations flowed from Dr. Wimmers's report, and it is not apparent to this Court, plaintiff cannot establish that this case should be remanded for further proceedings.

Third, because the opinion of a non-examining physician "cannot by itself constitute substantial evidence," Dr. Wimmers's assessment, alone, does not establish the extent of plaintiff's impairments. Lester, 81 F.3d at 831. As such, the ALJ was free to reject Dr. Wimmers's restrictions unless they were supported by other evidence in the record. Osenbrock, 240 F.3d at 1164-65; see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the other medical evidence contradicts Dr. Wimmers's report. Plaintiff has not received regular treatment for his allegedly disabling mental conditions and, as such, does not have

any treating doctors; however, numerous other medical sources, including examining Drs. Sachs, Wicher, and Wood, as well as consulting Drs. Rethinger and Henry, opined that plaintiff had fewer and less severe limitations than those assessed by Dr. Wimmers.  (Tr. 376-82, 587-95, 813-31, 832-35, 837-53.)

In making their assessments, these other doctors took into consideration inconsistencies in plaintiff's reports, his substance abuse, and his gain-seeking behavior.  (Id.)  Further, these other doctors performed their evaluations subsequent to Dr. Wimmers. (Id.)  As a result, their opinions are a more recent reflection of plaintiff's mental functioning.  Accordingly, in formulating plaintiff's RFC, the ALJ appropriately relied more heavily on these later opinions.  See Lester, 81 F.3d at 831.

Thus, consistent with Judge Brown's remand order, I find that the ALJ adequately considered and accounted for the limitations imposed by all of claimant's impairments in the RFC.  Therefore, while it was legal error for the ALJ to silently reject the opinion of Dr. Wimmers, I find that the error was harmless as it was both non-prejudicial to plaintiff and irrelevant to the ALJ's ultimate disability conclusion.

V.  Past Relevant Work

Plaintiff contends that, because he never performed substantial gainful activity ("SGA"), he has no past relevant work;

as such, he asserts that it was error for the ALJ to determine that he was not disabled at step four.

This Court declines to address plaintiff's fifth allegation of error, as the ALJ entered an alternative finding at step five. (Tr. 1049-50.) Thus, whether plaintiff performed SGA or had past relevant work is not dispositive. Accordingly, if the ALJ committed an error at step four, such an error was harmless. See Stout, 454 F.3d at 1055.

## VI. Step Five Finding

Finally, plaintiff argues that the ALJ erred by applying the Grids at step five to determine that he was not disabled because he has significant nonexertional limitations. There are two ways that the Commissioner can meet his step five burden: by applying the Grids or taking the testimony of a VE. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); see also Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

The Grids consist of a matrix of combinations relating to the four vocational factors used in a disability case: age, work experience, education, and physical ability. Tackett, 180 F.3d at 1101. The Grids may be applied, even in the presence of nonexertional limitations, as long as those limitations are not significant. Id. at 1102. Conversely, the Grids "are inapplicable when a claimant's nonexertional limitations are 'sufficiently severe' as to significantly limit the range of work permitted by

the claimant's exertional limitations." <u>Hoopai</u>, 499 F.3d at 1075. In such instances, the Commissioner must take the testimony of a VE and identify specific jobs that the claimant can perform despite his limitations. <u>Burkhart</u>, 856 F.2d at 1340.

Here, the ALJ had a VE testify at the 2010 hearing. The VE indicated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 1415.) Based on plaintiff's RFC, age, education, and work experience, the VE stated that there were a significant number of jobs in the national and local economy that plaintiff could perform. (Tr. 1415-17.) Specifically, the VE testified that plaintiff could return to his previous work as hopper feeder, casting grinder, and kitchen helper. (Tr. 1416.) The VE, however, also noted that there were "a substantial number of other unskilled, medium and light exertion jobs that could be performed" despite plaintiff's limitations. (<u>Id.</u>)

The ALJ explicitly discussed the VE's testimony at step five. (Tr. 1050.) Further, while the ALJ found that plaintiff was "not disabled" under the Grids, he based his ultimate disability determination on the VE's testimony: "based on the testimony of the vocational expert, I conclude that even of the claimant was unable to return to his past relevant work, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (<u>Id.</u>)

Thus, despite plaintiff's assertion to the contrary, the ALJ did not rely exclusively on the Grids in finding that plaintiff was not disabled; rather, while the ALJ admittedly conflated his analysis regarding use of the Grids and the VE, the ALJ based his final determination on the VE's testimony. As such, whether the application of the Grids should have been precluded by plaintiff's allegedly significant nonexertional limitations is immaterial.

Therefore, because the VE identified a significant number of jobs that exist in the national and local economy that plaintiff could perform despite his limitations, and because those jobs were consistent with the DOT, the ALJ did not err in finding that plaintiff was not disabled at step five. See 20 C.F.R. §§ 404.1566, 416.966.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this ___6___ day of March, 2012.


_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

24 - OPINION AND ORDER